IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANNETTE STEWART WATKINS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-cv-752-TFM |
| | ) | (WO) |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. Introduction**

Plaintiff Annette Stewart Watkins ("Watkins") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Watkins was 40 years old at the time of the hearing and has a high school equivalency diploma. (R. 28, 32, 47.) Watkins has prior work experience as a

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

laborer and assistant plant control operator, a car porter, waitress, and construction worker. (R. 33-36, 50-51.) Watkins alleges that she became disabled on August 14, 2007, from rapid cycling bipolar depression, neck and back pain, arthritis, and breathing problems. (R. 38, 40, 42-43.) After the hearing, the ALJ found that Watkins suffers from severe impairments of degenerative disc disease of the cervical and lumbosacral spine, osteoarthritis of the hands, bipolar disorder, osteoarthritis, and headache disorder. (R. 13.) The ALJ found that Watkins is unable to perform her past relevant work, but that she retains the residual functional capacity to perform light work with limitations. (R. 18.) Specifically, the ALJ found:

> [Watkins] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours out of 8 hours; frequently balance and kneel; occasionally stoop, crouch, crawl and climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently handle bilaterally; and frequently finger bilaterally.  The claimant is limited to work that requires no more than occasional exposure to extreme cold and avoids all exposure to unprotected heights and dangerous machinery.  She will have one to two unplanned absences per month for medical reasons.  The claimant is limited to work involving no more than simple, routine tasks and non-transactional interaction with the public.  She is able to sustain concentration and attention for 2 hour[] periods with customary breaks.  Workplace changes must be gradual and infrequent, and the claimant requires a well-spaced work environment.

(R. 18.)

Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Watkins could perform, including work as a table worker, document scanner, and general clerk. (R. 22.) Accordingly, the ALJ concluded that Watkins is not disabled. (*Id.*)

4

    **B. The Plaintiff's Claims.** Watkins presents the following issues for review:

(1)    The Commissioner's decision should be reversed, because the ALJ failed to discuss Ms. Watkins' severe headache disorder.

(2)    The Commissioner's decision should be reversed, because the ALJ failed to give proper weight to the opinion of Dr. Meghani, Ms. Watkins' treating physician.

(Doc. No. 11, p. 6.)

## IV. Discussion

    **A. The Headache Disorder.** Watkins asserts that the ALJ failed to consider how her headache disorder impacts her ability to work. During the hearing before the ALJ, Watkins' attorney stated that Watkins "suffers some headaches as well as numbness throughout portions of her extremities" due to suffering from degenerative disc disease of both the cervical and lumbar spine and arthritis. (R. 31.) The record indicates that, although Watkins testified about back pain, she did not provide any testimony indicating that she suffers from headaches. Nonetheless, in his analysis, the ALJ found that Watkins testified that she suffers from headaches. (R. 18.) Thus, the court will discuss whether the ALJ applied the proper standard when considering whether Watkins headaches affect her residual functional capacity to perform work.

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

The ALJ considered Watkins' testimony and discussed the medical evidence. The ALJ acknowledged that Watkins "had complaints of headaches, yet the evidence does not

reflect these were of the severity as alleged." (R. 20.)  Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"  *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).  The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision."  *Holt,* 921 F.2d at 1223.  Relying on the treatment records, objective evidence, and Watkins' own testimony, the ALJ concluded that her allegations regarding her headache pain were not credible to the extent alleged and discounted that testimony.  After a careful review of the ALJ's analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.

The medical records support the ALJ's conclusion that, while Watkins' headaches could reasonably be expected to produce pain, her headache impairment is not so severe as to give rise to disabling pain.  In December 2006, Watkins sought treatment for her headaches from Dr. Muhammad W. Ali, a neurologist. (R. 231.)  During the initial visit, Watkins complained of suffering from a pounding headache at the base of her neck two to

7

three times a week and that her pain was a ten on a scale of zero to ten. (*Id*.) Dr. Ali's impression was that Watkins suffers from discogenic syndrome/HNP lumbar, parasthesia numbness, cervicobrachial syndrome (diffuse), and headache. (R. 232.) Dr. Ali prescribed Maxalt MLT and Depakote for the treatment of headaches, as well as Lortab, Provigil, Celebrex, and Lexapro. (R. 233.) Watkins continued to receive treatment for her headaches and back and neck condition, including physical therapy, massage therapy, epidural steroid injections, and medication on a monthly basis. (R. 222-227.) During this time, the severity of her headache pain gradually subsided. (*Id*.) For example, on May 29, 2007, Watkins returned to Dr. Ali complaining of a pounding headache near the base of her neck accompanied by photophobia and phonophobia two to three times a week. (R. 223.) She reported that her pain was between three and four on a ten-point scale. (*Id*.) Dr. Ali administered physical therapy to Watkins' lumbar, cervical, and upper thoracic regions and noted a good prognosis. (R. 224.) During a follow-up visit on July 9, 2007, Dr. Ali recommended that Watkins continue taking her current medication, including Maxalt MLT, Valproic Acid, and Lortab. (R. 222.)

One week before the August 14, 2007 date of onset, Watkins returned to Dr. Ali's office complaining of lower back and neck pain, as well as a pounding headache at the base of her neck accompanied by photophobia and phonophobia. (R. 220.) She reported that her headaches occurred two to three times a week and her pain was a seven on a scale of zero to ten. (*Id*.) Dr. Ali assessed that Watkins suffered from a "flare up of old condition," performed physical therapy on her spine, and assessed a good prognosis. (R. 221.)

During a consultative examination by Dr. James O. Colley, a general surgeon at MDSI Physician Services, on May 20, 2008, Watkins reported a history of suffering from posterior, severe headaches about once a week, associated with nausea, photophobia, and phonophobia. (R. 242.) Although Dr. Colley diagnosed Watkins as suffering from several conditions, including degenerative disc disease, osteoarthritis, and obstructive sleep apnea, the consultative physician did not list Watkins' headaches as one of her chief complaints or as a diagnosed impairment. (R. 241-248.)

On September 28, 2009, Watkins sought treatment from Dr. G. Alan Young, an internist, at the Enterprise Medical Clinic for her complaints of arthritis, lung problems, and mitral valve prolapse. (R. 205.) She reported a past medical history of headaches, that she receives pain management treatment from a clinic in Jasper, Alabama, and that she currently takes Depakote, Xanax, Lexapro, and Adderall. (R. 205-207.) Thus, the medical records demonstrate that the only treatment Watkins' sought for her headaches during the relevant time period is pain management, which included a prescription for Depakote, at a local clinic.

After a careful review of the record, the court concludes that the ALJ's reasons for discrediting Watkins' testimony were both clearly articulated and supported by substantial evidence. To the extent that Watkins is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**B. Rejection of Treating Physician's Opinion.**  Watkins argues that the ALJ improperly rejected her treating psychiatrist's opinion about the severity of her limitations. In essence, the plaintiff argues that if the ALJ accepted Dr. Shakir Meghani's assessment about her mental impairments, she would be disabled.  In October 2009, Dr. Meghani completed a psychiatric evaluation form describing Watkins' mental limitations.  (R. 302-305.)  According to Dr. Meghani, Watkins had marked limitations in eighteen areas dealing with her ability to function in a work environment and her mental impairments would be expected to last more than twelve months.  (*Id.*)

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error.  *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating

physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Meghani because his treatment records do not support his assessment that Watkins suffers from marked mental limitations. (R. 20.)

> As for the opinion evidence, Dr. Meghani described the claimant as having marked impairments in the Mental Residual Functional Capacity; however, on August 27, 2009, the treatment records of Dr. Meghani indicated the claimant's behavior was normal, she was fully alert, her attention span was good, her thought process was good and direct, her memory (recent) was good, her impulse control was good as well as her judgment/insight, consequently, the mental residual functional capacity form that Dr. Meghani completed does

>not merit significant weight.
>
>The Residual Functional Capacity in Exhibit 7-F and the Psychiatric Review Technique Form in Exhibit 5-F are consistent with the credible medical evidence and merit significant weight.
>
>The medical expert testified the claimant's "B" criteria impairments were mild in daily activity, mild in social functioning and mild in concentration, persistence and pace with no episodes of decompensation. This testimony is generally consistent with the credible medical evidence of record and merits substantial weight.

(R. 20-21.)

The ALJ's determination is supported by substantial evidence. On May 22, 2008, Dr. Walter Jacobs, a consultative psychologist, conducted an examination of Watkins. (R. 235.) Dr. Jacobs noted Watkins' history of mental illness, including a three-week hospitalization for an episode of bipolar depression at Hillcrest Hospital eight years earlier. (*Id.*) He also noted that Watkins had not received any mental health care since September 2007. (*Id.*) During the evaluation, Watkins reported that she had "been in bed for three days," her appetite was poor, her energy was variable, and she felt the need to cry. (R. 236.) Dr. Jacobs' diagnostic impression was bipolar disorder, mixed. (R. 237.) Dr. Jacobs concluded that, with proper treatment, Watkins should have a reasonably good prognosis. (*Id.*)

In addition, the medical records demonstrate that Watkins' mental condition steadily improved upon seeking treatment from Dr. Meghani, a psychiatrist. During an initial psychiatric evaluation on October 27, 2008, Dr. Meghani found that Watkins suffered from a depressed mood, poor attention, and fair insight and diagnosed her as suffering from rapid cycling bi-polar disorder and attention deficit hyperactivity disorder. (R. 298.) On

December 29, 2008, Dr. Meghani noted that Watkins' affect was labile, her impulse control was fair, and her psycho motor activity was hyperactive. (R. 293.) He also determined that her progress toward treatment goals was fair and changed her medication to Adderall. (*Id*.) Upon conducting an evaluation on February 23, 2009, Dr. Meghani found that Watkins had a good attention span and impulse control, appropriate affect, and average judgment or insight, and that her progress toward treatment goals was good. (R. 292.) Dr. Meghani also noted Watkins' current medications were Xanax, Lexapro, and Adderrall. (*Id*.) When Watkins returned for a follow-up appointment on May 25, 2009, she reported that she was "doing ok" and denied having any problems or complaints. (R. 291.) Dr. Meghani found that Watkins' attention span, impulse control, and memory were good, her thought process was goal directed, her affect was appropriate, and her judgment or insight were average. (*Id*.) Dr. Meghani concluded that Watkins was making good progress toward her treatment goals and advised her to continue her current medications. (*Id*.) This court therefore concludes that the ALJ's discounting of Dr. Meghani's opinion that Watkins is markedly impaired in all areas of mental functioning on the basis that the treating physician's opinion is inconsistent with his own medical records is supported by substantial evidence.

   The ALJ's rejection of Dr. Meghani's conclusory opinion is also supported by the testimony of Dr. Doug McKeown, a medical expert. During the hearing, Dr. McKeown testified concerning the conflict between Dr. Meghani's assessment that Watkins suffers from marked mental limitations and the other mental health records. Dr. McKeown stated:

> . . . Current medications indicated are Adderall, basically a

13

psychostimulant; Xanax, an anxiolytic medication; Depakote, the mood stabilizer; and Lexapro, an SSRI antidepressant. The ongoing mental status notes from Dr. [Meghani] indicate in all cases when she's seen that she's doing well, adjusting well to the medication, and Dr. [Meghani] considered her to have a good prognosis. A bipolar with ADHD symptoms were the primary diagnostic considerations.

There is a RFC from Dr. [Meghani] at 11F that basically indicates the Claimant is markedly impaired in all areas. This is inconsistent with progress notes he provides, which indicate basically minimum symptomatology. And I would have to consider that to be an overstatement of the symptoms, and particularly since there's been no necessary treatment required other than basically medication management. The evaluation for the Department would be under 12.04 for bipolar disorders. The B criteria would indicate mild impairments of activities in daily living, social functioning; and concentration, persistence, and pace with no episodes of decompensation in work or work-like settings dating back to 2007.

From an RFC perspective, based on the available progress notes from Dr. [Meghani], there really would be no impairments above a moderate level, with the moderate level perhaps with regard to completing complex task and varied task. Otherwise essentially there would be no more than mild impairments in all other areas.

(R. 47-48.)

Thus, the ALJ further resolved any conflict between Dr. Meghani's opinion that Watkins suffers from marked impairments and the other medical records by consulting a medical expert. "Because the ALJ articulated good cause for discounting the treating physician's opinion, the ALJ did not err in giving more weight to the consulting, examining physician's opinion." *Kelly v. Commissioner of Social Sec.*, 401 Fed. Appx. 403, 408 (11th Cir. 2010). This court therefore finds that the ALJ's discounting of Dr. Meghani's opinion

that Watkins is markedly impaired is supported by substantial evidence.[4]

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

DONE this 26th day of April, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[4] In her brief, Watkins argues that the ALJ failed to consider her treating physician's diagnosis of ADHD. Watkins, however, does not point to any limitations related to ADHD which were not accounted for in the ALJ's finding concerning her residual functional capacity to perform work. Furthermore, in his summary of the medical records, the ALJ discussed Dr. Meghani's diagnosis of ADHD. (R. 16.) During the hearing before the ALJ, the medical expert testified that Watkins suffers from bipolar depression with ADHD symptoms. (R. 47.) Dr. McKeown's testimony is supported by substantial medical evidence in the record. (R. 235, 293.) As previously discussed, the ALJ considered the extent which Watkins' bipolar depression and other mental conditions have on her ability to perform work. Thus, Watkins is entitled to no relief with respect to this contention.